JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1395 | **DATE** | 3/26/2003 |
| **CASE TITLE** | American Natl' Bank vs. Town of Cicero | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: this Court grants defendant Cicero's motion for summary judgment [39-1] and dismisses Cicero's motion to strike as moot [36-1]. Because the only other defendant, Anthony J. Accardo, was previously dismissed from the case by agreement, this case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 53 |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN NATIONAL BANK and )
TRUST COMPANY OF CHICAGO, as )
successor trustee to Comerica Bank, u/t/a )
dated January 3, 1975, EDITH KEBLERIS, )
individually, as beneficiary of AMERICAN )
NATIONAL BAND AND TRUST )
COMPANY OF CHICAGO, as successor )
trustee to Comerica Bank, u/t/a dated )
January 3, 1975, SCOTT KEBLERIS, )
individually, and ANTHONY KEBLERIS, )
individually, )
)
    Plaintiffs, )
)
v. )    01 C 1395
)
TOWN OF CICERO and ANTHONY J. )    Judge Ronald A. Guzmán
ACCARDO, individually, and in his )
official capacity, )
)
    Defendants. )

DOCKETED
MAR 2 8 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs has sued defendant Town of Cicero ("Cicero") for the alleged denial of their equal protection rights pursuant to 42 U.S.C. § 1983 ("section 1983") (Count I). This Court previously granted defendants' motion to dismiss as to Counts II through VI. *Am. Nat'l Bank & Trust Co. v. Town of Cicero*, No. 01 C 1395, 2001 WL 1631871 (N.D. Ill. Dec. 14, 2001). With regard to Count I, the Court previously dismissed plaintiffs' section 1983 claim based on procedural and substantive due process, as well as plaintiffs' request for a declaratory judgment. *Id.* Finally, the Court found that plaintiffs were time barred from basing their section 1983 claims on activity that occurred prior to February, 1999. Therefore, only plaintiffs' section 1983 claim based on alleged equal protection

violations that occurred in 1999 and 2000 remain for adjudication. Before the Court are Cicero's motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 as to the remaining claim and its motion to strike the plaintiffs' expert disclosures and bar expert testimony. For the reasons provided in this Memorandum Opinion and Order, the Court grants summary judgment in favor of Cicero and denies the motion to strike as moot.

## **FACTS**

Unless noted, the following facts are undisputed. The Court finds a brief synopsis of the events leading up to the alleged equal protection violations helpful. Plaintiff Edith Kebleris was at all relevant times the owner and operator of the Hawthorne Inn ("Hawthorne"), located at 3544-3546 South Laramie Avenue in Cicero, Illinois. (Pls.' LR 56.1(b)(3)(B) ¶ 1.) The Hawthorne consists of both a Rooming House and a Tavern. (Def.'s LR 56.1(a)(3) ¶ 3.36.) The Rooming House contained twenty-three rooming units on two floors with two communal bathrooms on the second floor. (Def.'s LR 56.1(a)(3) ¶ 3.33.) Consequently, the Rooming House did not have an operating water closet, lavatory, bathtub, or shower for every rooming unit. (Def.'s LR 56.1(a)(3) ¶ 3.30.) The Rooming House was operated by Edith from 1976 until it was closed by Cicero in 1998. (Pls.' LR 56.1(b)(3)(B) ¶ 1.)

In October 1998, employees from the Cicero Building Department and Health Department inspected the Hawthorne property. (Pls.' LR 56.1(b)(3)(B) ¶ 23.) As a result of this inspection, Edith received two citations. (*Id.* at ¶ 24.) She received one ticket, No. 636-770, for operating the Hawthorne without a business license. (*Id.*; the ticket numbers have not been admitted by Cicero.) She received a second ticket, No. 636-771

2

for failing to have an operating water closet, lavatory basement, bathtub, or shower connected to every rooming unit in the Hawthorne pursuant to Cicero's Rooming House Ordinance, No. 50-90, as codified in § 19-83 of the Code of Ordinance. (Pls.' Ex. A.)

As an aside, Edith argues that ticket No. 636-770 was improper because she paid for a business license between 1975 and 1998, even though she did not receive a physical license. (Pls.' Ex. B, at 50-51, 112-14, 116.) She also contends that ticket No. 636-771 was improper because of the Savings Clause of Ordinance 50-90. (*Id.*) She further contends that after issuance of the tickets, Cicero closed down the Rooming House, evicted tenants then staying there, and kept the Rooming House closed down. (*Id.*)

Plaintiffs' section 1983 equal protection claim, the only claim that remains, is based on two instances of conduct that occurred after February 1999. The first is the alleged aborted sale to Mr. Diaz in 1999 after Cicero refused to provide him with information necessary to bring the Hawthorne up to code. (Compl. ¶ 28.) The second act was the alleged "forced sale" of the Hawthorne to defendants under the threat of condemnation. (*Id.* ¶¶ 36-40.)

On July 13 and December 14, 1999, the Corporate Authorities of Cicero adopted ordinances authorizing the acquisitions of parcels of real estate, including the land at which the Hawthorne is located. (Def.'s LR 56.1(a)(3) ¶ 3.3.) These ordinances stated that the public purpose of the acquisition of the Hawthorne property was to reduce traffic congestion and to provide additional public off street parking. (Def.'s LR 56.1(a)(3) ¶ 3.4.) These ordinances authorized the acquisition through negotiation or condemnation. (*Id.*) The Town or Cicero, in or about September, 1999 offered to purchase the property owned by the plaintiffs. (Def.'s LR 56.1(a)(3) ¶ 3.6.) All correspondence regarding the

purchase of the plaintiffs' property including exchange of offers and contracts came solely from the attorneys for Cicero. (Def.'s LR 56.1(a)(3) ¶ 3.13.) Plaintiffs retained an attorney, Paul Skyrd, to assist them with issues relating to their properties, including the offer from the Town of Cicero. (Pls.' LR 56.1(b)(3)(A) ¶ 3.8.) The Hawthorne was listed for sale with an asking price of $215,000.00 at least by December 14, 1999. (Pls.' LR 56.1(b)(3)(A) ¶ 3.15.) Eventually, Mr. Skyrd communicated a demand of $20,000.00 for the Laramie Lots, and those lots were eventually purchased for $20,000.00. (Pls.' LR 56.1(b)(3)(A) ¶ 3.16.) Weighing the record in the light most favorable to the plaintiffs, the purchase of the Hawthorne Inn was contingent on the purchase of the Laramie Lots. (Pl.'s Ex. D, at 25, 32, 44.) After further negotiations, the Town of Cicero purchased the Hawthorne for $200,000. (Pls.' LR 56.1(b)(3)(A) ¶ 3.20.)

## DISCUSSION

Rule 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). If a reasonable jury could not find for the party opposing the motion, it must be granted. *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997). Similarly, "a

complete failure of proof concerning an essential element of the case necessarily renders all other facts immaterial" and requires the court to grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In any section 1983 action the plaintiff must prove two essential elements. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of the right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Plaintiffs have proceeded as a "class of one," and allege that Cicero violated their equal protection rights. The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination . . . occasioned . . . by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923). "A class of one is likely to be the most vulnerable of all," and accordingly, such a class should not be denied the protection of the equal protection clause. *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).

To be meritorious in their claim, plaintiffs must demonstrate that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To make out a *prima facie* case, plaintiffs "must present evidence that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Plaintiffs

must demonstrate as an essential element of their case that they were treated differently than someone who is "*prima facie* identical" in all relevant respects. *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002).

Here, plaintiffs have introduced some evidence that the Anetta, another rooming house in Cicero, was not summarily closed down after the passage of the Ordinance. However, the alleged impropriety surrounding the closing of the Hawthorne has been found time-barred by this Court. Before the Court in this summary judgment determination are the alleged aborted sale to Mr. Diaz in 1999 and the alleged "forced sale" of the Hawthorne in 2000. The Court will address each of these claims in turn.

Plaintiffs claim that Mr. Diaz was going to purchase the Hawthorne in 1999. They further assert that before purchasing the property, Mr. Diaz wanted to determine how to bring the Hawthorne up to code. Plaintiffs have asserted that Mr. Diaz told her of several visits to the Cicero town hall where he was rebuked or ignored by town officials. However, plaintiffs have introduced no admissible evidence regarding these encounters, but instead rely on hearsay. (*See* Pl.'s LR 56.1(b)(1), Ex. B, at 77-78.) These statements are inadmissible at trial and therefore should not be considered in the summary judgment stage. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Plaintiffs have therefore failed to establish a course of activity by that could be compared to similarly situated persons.

Furthermore, plaintiffs have failed to introduce evidence that similarly situated property owners were treated more favorably in their dealings with Cicero, *i.e.*, in trying to bring property up to code. In *Purze v. Village of Winthrop Harbor*, the United States Court of Appeals for the Seventh Circuit upheld on appeal the grant of summary

6

judgment in favor of the defendant. 286 F.3d 452. In that case, the court held that plaintiffs failed to demonstrate that they were treated differently than others by the village board. *Id.* at 455. Specifically, the court held that where others "submitted their plans during different time periods and had their plan requests granted by different and previous Boards [than the plaintiffs]," the plaintiffs failed to demonstrate that similarly situated individuals were treated differently, and therefore upheld the district court's grant of summary judgment. *Id.*

As in *Pulze*, plaintiffs in the instant case have failed to introduce evidence to establish Mr. Diaz's course of dealings with Cicero and have further failed to demonstrate that similarly situated individuals were treated more favorably. Therefore, defendant is granted summary judgment as to plaintiffs' section 1983 equal protection claim based on the alleged aborted sale to Mr. Diaz.

Plaintiffs also claim that Cicero denied them equal protection by forcing the sale of the Hawthorne at a lowered price. The basis of this argument was that Cicero did not act properly in purchasing the Hawthorne property. Specifically, plaintiffs have alleged that Edith was not represented by legal counsel, was not fully aware of her legal rights to have the condemnation proceeding in court, and was not aware of her right to commence inverse condemnation proceedings. (*See* Pl.'s LR 56.1(b)(3)(B), Ex. B, at 42-43.) In sum, it is alleged Cicero used the threat of condemnation to force plaintiffs to sell at a price substantially below market value. However, plaintiffs have admitted that "the low asking price was a result of the Town of Cicero improperly shutting the business [Hawthorne] down." (*See* Pl.'s LR 56.1(b)(3)(A) ¶ 3.38.) As previously mentioned, any claim based on the closing of the Hawthorne has been found to be time-barred. *See also*

7

*Huynh v. Bd. of Educ.*, No. 01 C 2893, 2002 WL 500560, at *2 (N.D. Ill. Apr. 2, 2002) (holding that a court may consider time-barred evidence for purposes of establishing discriminatory intent, but not as a basis of recovery). Moreover, plaintiffs have failed to demonstrate that Cicero did not use similar pressure in dealing with other property authorized for eminent domain proceedings. *See Purze*, 286 F.3d 452. They have introduced no evidence of sales between others similarly situated in all relevant characteristics and the town of Cicero. Plaintiffs have therefore failed to demonstrate an essential element of a class of one equal protection claim. *See id.* Therefore, defendant's motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, this Court grants Cicero's motion for summary judgment [doc. no. 39-1] and dismisses Cicero's motion to strike as moot [doc. no. 36-1]. Because the only other defendant, Anthony J. Accardo, was previously dismissed from the case by agreement, this case is hereby terminated.

**SO ORDERED**  ENTERED: 3/26/03

HON. RONALD A. GUZMAN
**United States Judge**